FILED
2010 Jul-15  PM 01:25
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## EASTERN DIVISION

| | | |
|---|---|---|
| **DR. DOLIA PATTERSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:08-CV-2045-VEH** |
| | ) | |
| **TALLADEGA CITY BOARD OF** | ) | |
| **EDUCATION,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Plaintiff Dolia Patterson ("Ms. Patterson") initiated this job discrimination and retaliation lawsuit against Defendant Talladega City Board of Education (the "Board") on October 31, 2008.  (Doc. 1).  Pending before the court are the Board's Motion for Summary Judgment (Doc. 40) filed on April 19, 2010, and its Motion to Strike Portions of Plaintiff Dolia Patterson's, Mary McGhee's, and Shirley Simmons-Sims's Affidavits (Doc. 47) (the "Motion to Strike).  Both motions are now under submission.  (*See* Docs. 41-45, 49-50).  For the reasons explained below, the Board's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and its Motion to Strike is **TERMED** as **MOOT**.

## II.    FACTUAL BACKGROUND[1]

Ms. Patterson, a black female, was first hired by the Board in 1974.  She has worked in various teaching and administrative capacities throughout her tenure with the Talladega City School System (the "System"), and presently holds the position of principal at Houston Elementary School.

Eleven people, including Ms. Patterson, applied for the superintendent vacancy

---

[1]  Keeping in mind that when deciding a motion for summary judgment the court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the court provides the following statement of facts. *See Optimum Techs., Inc. v. Henkel Consumer Adhesives, Inc.*, 496 F.3d 1231, 1241 (11th Cir. 2007) (observing that, in connection with summary judgment, a court must review all facts and inferences in a light most favorable to the non-moving party). This statement does not represent actual findings of fact.  *See In re Celotex Corp.*, 487 F.3d 1320, 1328 (11th Cir. 2007).  Instead, the court has provided this statement simply to place the court's legal analysis in the context of this particular case or controversy.  Also, facts that are not material to the court's ruling on summary judgment have not been included in this background.

Finally, the court notes that the Board's response to Ms. Patterson's statement of facts included in its reply (Doc. 36) appears to be misnumbered and the court has been unable to discern any appreciable pattern with respect to this procedural error. For example, the Board lists paragraphs 1, 2, and 16 in section A, the "Reply to Plaintiff's Disputes of Fact" (Doc. 36 at 1), but Ms. Patterson's section A only lists paragraph 1 as "[a]dmitted, but with clarification." (Doc. 43 at 1).  Likewise, while the Board purports to dispute paragraphs 34 and 35 of Ms. Patterson's "Statement of Undisputed Facts" referencing  the application  packet as "unsupported and . . . not rais[ing] a genuine issue of material fact" (Doc. 36 at 4), that corresponding portion of Ms. Patterson's opposition is instead discussing Dr. Horton's position as an assistant principal and superintendent of the Colorado school district.  (Doc. 43 at 6). Therefore, in formulating its statement of facts, the court has focused upon the factual content set forth in the Board's opening brief and Ms. Patterson's opposition.

created by Lee Messer's ("Mr. Messer") intention to retire effective June 30, 2007. The candidates were:  (1) William Frank Brown ("Mr. Brown"); (2) Rhonda H. Lee ("Ms. Lee"); (3) Douglas Harold Campbell ("Mr. Campbell"); (4) Ms. Patterson; (5) James Edward Davis ("Mr. Davis"); (6) Thomas T. Perryman, Jr. ("Mr. Perryman"); (7) Darren Douthitt ("Mr. Douthitt"); (8) Pattie Neill Ragsdale ("Ms. Ragsdale"); (9) Nicke James Gaspers ("Mr. Gaspers"); (10) Yvette Irise Richardson ("Ms. Richardson"); and (11) Joanne S. Horton ("Ms. Horton").  (Doc. 42-5 ¶ 5).

In a work session on May 11, 2007, followed by a regular meeting on May 14, 2007, the Board decided in a 3-2 racially divided vote to choose the next superintendent from those persons without any ties to the jurisdiction due to a dissatisfaction with the status quo and a desire to bring in "new blood" to the System. (Doc. 42-5 ¶¶ 6-8).  Based upon this decision, the number of applicants eligible for an interview were reduced from eleven to five: (1) Ms. Ragsdale (a white female, who withdrew her application before the Board conducted any interviews); (2) Mr. Davis (a black male); (3) Mr. Perryman (a white male); (4) Mr. Gaspers (a white male); and (5) Ms. Horton (a white female).  (Doc. 42-5 ¶ 8).

On June 11, 2007, the Board decided again in another 3-2 racially divided vote to hire Ms. Horton as Mr. Messer's replacement.  ((Doc. 42-5 ¶ 14).  Ms. Patterson filed an EEOC charge on June 20, 2007, asserting race discrimination and retaliation

3

(on the basis of a prior 2003 EEOC charge) in the Board's filling of the superintendent vacancy.  (Doc. 1 at Ex. A).

## III.   STANDARD OF REVIEW

### A.   Summary Judgment

Summary judgment is proper only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R . Civ. P. 56(c).  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to 'come forward with specific facts showing that there is a genuine issue for trial.'"  *International Stamp Art, Inc. v. U.S. Postal Service*, 456 F.3d 1270, 1274 (11th Cir. 2006) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

### B.   Employment Discrimination Generally

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133

4

(2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509-12 (1993); *Nix v. WLCY Radio/Rahall Comms.*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases in which there is no direct evidence of discrimination.[2]  *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination. Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.  Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered

---

[2] As the Eleventh Circuit has explained, "only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, . . . constitute direct evidence of discrimination." *Carter v. City of Miami*, 870 F.2d 578, 782 (11th Cir. 1989) (footnote omitted).  Based upon this standard, Ms. Patterson's case is purely a circumstantial evidence one, as she correctly concedes.  (*See* Doc. 43 at 11 ("Because the evidence in this case is circumstantial, the Plaintiff must satisfy the burden-shifting requirements of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)).

by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though the defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802-05; *Burdine*, 450 U.S. at 252-54; *Desert Palace*, 539 U.S. at 101-02.

## IV.   ANALYSIS

### A.   Race Discrimination[3]

#### 1.   Ms. Patterson has established a *prima facie* case of race discrimination.

Ms. Patterson premises her race discrimination claim upon the Board's decision not to promote her to the position of superintendent. "To establish h[er] *prima facie* case of discriminatory failure to promote, [Ms. Patterson] must show that (1) [s]he

---

[3] Ms. Patterson asserts race discrimination under both Title VII and § 1981. Because the framework for analysis and requirements of proof under both statutes are comparable, the court addresses them collectively, rather than separately. *See, e.g., Rice-Lamar v. City of Ft. Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000) ("The elements of a claim of race discrimination under 42 U.S.C. § 1981 are also the same as a Title VII disparate treatment claim in the employment context.") (citing *Peterson v. BMI Refractories*, 132 F.3d 1405, 1412 n.13 (11th Cir. 1998)); *Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both of these statutes have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well.").

was in a protected group; (2) [s]he was not given the promotion; (3) [s]he was qualified for the position[;] and (4) someone outside of the protected group was given the position." *See Standard*, 161 F.3d at 1333 (setting forth *prima facie* requirements). Not only is it undisputed that Ms. Patterson was qualified for the vacant superintendent slot which the Board filled with a white candidate, Ms. Horton, but also, in moving for summary judgment, the Board makes no argument that Ms. Patterson has prima facially failed to establish an actionable race-based failure to promote claim. (*See* Doc. 41 at 9 ("Without conceding that plaintiff meets her *prima facie* burden, the Board articulated legitimate, nondiscriminatory reasons for hiring a candidate with no connection to the school system.")). Therefore, the Board has waived and/or alternatively abandoned any *prima facie* challenge to Ms. Patterson's failure-to-promote claim.[4]

## 2.   The Board has met its burden of production.

The record also shows that the Board has offered a non-discriminatory

---

[4]   *See, e.g., Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment.") (citation omitted); *Dunmar*, 43 F.3d at 599 ("[T]he onus is upon the parties to formulate arguments[.]") (citation omitted); *Hudson v. Norfolk Southern Ry. Co.*, 209 F. Supp. 2d 1301, 1324 (N.D. Ga. 2001).

explanation for the decision to select Ms. Horton over Ms. Patterson through the testimony of the Board's President, Mr. Braswell, and Board member, Ms. Miller. In particular, the Board has indicated that, at Mr. Braswell's suggestion, it decided in sum to:

> [C]onsider candidates who were unconnected to the system and who could come in with fresh ideas, new blood, and new energy. Enrollment was low at the time, and [the Board] thought that by bringing in someone new with 'charismatic energy,' who would be visible in the community, the system's public image might improve[.]

(Doc. 41 at 11 (citations omitted)).

Similarly, Ms. Miller testified that the Board's decision to focus only upon outside candidates was based upon the System's rising school dropout rate, declining enrollment, and presenting a poor public image. (*See* Doc. 42-11 at 33).

### 3.    Ms. Patterson has produced sufficient evidence of pretext.

In evaluating the issue of pretext, "[t]he district court must evaluate whether the plaintiff has demonstrated 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence.'" *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (citations omitted). "In other words, [Ms. Patterson] must provide sufficient evidence to allow a reasonable

fact finder to conclude that the proffered reasons were not actually the motivation for h[er] [non-promotion]." *See Standard*, 161 F.3d at 1332 (citing *Combs*, 106 F.3d at 1538). Here, the court determines that the record contains "'evidence of such quality and weight that reasonable and fairminded men in the exercise of impartial judgment might reach different conclusions.'" *See MacPherson v. University of Montevallo*, 922 F.2d 766, 776 (11th Cir. 1991) (quoting *Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989)).

This evidence, taken together and in a light most favorable to Ms. Patterson, as the court is obligated to do on summary judgment, includes a racially divided 3-2 vote by the Board to exclude from its consideration any local candidates occurring (i) only after it had received and reviewed the applications and (ii) after it had previously agreed to focus on selecting local candidates (Doc. 44-5 ¶ 20; Doc. 44-6 ¶ 7), *cf. Morrison v. Booth*, 763 F.2d 1366, 1374 11th Cir. 1985) ("Departures from normal procedures may be suggestive of discrimination.") (citation omitted), and (iii) even though the two past superintendents, Mr. Messer and Larry Thacker ("Mr. Thacker"), both of whom are white, came from outside the System, as well as the fact that this decision removed from the selection process all but one of the black applicants. (*See* Doc. 42-11 at 21-22 (Board member Ms. Miller's testifying that the Board decided during a work session that it "needed some new ideas" and that it

"would look outside" and confirming that this decision occurred after the Board "had looked at the 11 applications"); *id.* at 29-30 (Ms. Miller's confirming the racial composition of the Board vote as recorded in the minutes); Doc. 42-11 at 36-37 (discussing predecessor superintendents)).

Specifically, the decision eliminated three of the four African-American candidates from consideration (Ms. Patterson, Mr. Douthit, and Mr. Campbell) and left only one eligible African-American candidate, Mr. Davis. In contrast, four white candidates remained eligible: Ms. Ragsdale (who later withdrew her name from consideration), Mr. Perryman, Mr. Gaspers, and the hiree, Ms. Horton. Moreover, particularly puzzling to this court is the Board's expressed desire to rectify several system-wide problems through limiting the pool to only outside persons when the record lacks (1) any indication that the outsider/"new blood" status of the immediate past two superintendents did anything to prevent a continued decline in the system's performance and public image and (2) any explanation why, only <u>after</u> all the 2007 applications had been received and reviewed, the earlier decision by the Board to focus on selecting <u>local</u> candidates in light of the system's serious struggles not only (i) no longer made any sense, but also (ii) the complete exclusion of all local applicants, the majority of whom were black, only then somehow did make sense.

Also, while the Board contends that Ms. Patterson's race discrimination claim

fails because a comparison of her qualifications to those of Ms. Horton do not reveal that Ms. Patterson's are significantly superior, a disparity in qualifications is not the exclusive means by which a plaintiff can show pretext in the promotional decisional process. *See, e.g., Thomas v. Troy City Bd. of Educ.*, 302 F. Supp. 2d 1303, 1308 (M.D. Ala. 2004) ("The evidentiary standard in the Eleventh Circuit Court of Appeals, where claims of discrimination in hiring are based on evidence that the plaintiff was more qualified than the individual hired, is clear[.]") (emphasis added). The court finds this principle to be especially true in the context of the Board's admission that it did not engage in any comparative assessment of all the applicants' qualifications during the course of its decision and certainly did not rule out promoting Ms. Patterson on the basis that she was less qualified, but rather due to the fact that, as an internal candidate,[5] the Board voted her ineligible to become the next

_____

[5]   While the Board's counsel suggests that the Board's decision to hire Ms. Horton over Ms. Patterson did, in fact, turn upon Ms. Horton's superior level of experience (Doc. 36 at 8-10), the record reveals no evidence that Ms. Patterson's inferior qualifications motivated the Board to reject her. *See Burdine*, 450 U.S. at 254 ("The burden that shifts to the defendant, therefore, is to rebut the presumption of discrimination by producing evidence that the plaintiff was rejected, or someone else was preferred, for a legitimate, nondiscriminatory reason.") (emphasis added); *id.* at 255 ("To accomplish this, the defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.") (emphasis added) (footnote omitted).   Moreover, the source of the legitimate explanation must be attributable to the employer, *i.e.*, the Board, and not its legal counsel, after litigation has ensued. *Id.* at 255 n.9 ("An articulation not admitted into evidence will not suffice.  Thus, the defendant cannot meet its burden merely through

superintendent.  *See, e.g., Joshi v. Florida State Univ. Health Ctr.*, 763 F.2d 1227, 1235 (11th Cir. 1985) ("Similarly, in this case, because Joshi's qualifications were not considered, FSU cannot rely on its contention that other candidates were better qualified to explain its decision not to hire her."); *cf. Springer v. Convergys Customer Management Group Inc.*, 509 F.3d 1344, 1347-48 (11th Cir. 2007) ("Convergys' [s] articulated reason for promoting Susan Johnson was that <u>she was the more qualified candidate</u>.") (emphasis added); *Thomas*, 302 F. Supp. 2d at 1307 ("Defendants contend that Thomas was not hired because, <u>in the school board's opinion, he was not the most qualified candidate for the position</u>.") (emphasis added).  Therefore, even assuming that Ms. Patterson cannot demonstrate that she was the superiorly qualified person for superintendent, this does not foreclose her from attempting to show pretext in an alternative manner, which, for the reasons explained above, the court concludes she has satisfactorily done.

---

an answer to the complaint or by argument of counsel.") (emphasis added); *see also Skyline Corp. v. N.L.R.B.*, 613 F.2d 1328, 1337 (5th Cir. 1980) ("Statements by counsel in briefs are not evidence."); *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).  Alternatively, to the extent that the Board can now properly, but belatedly, maintain that Ms. Horton's superior qualifications are actually what motivated it not to promote Ms. Patterson in 2007 amounts to a "shifting explanation for its actions[,]" which only bolsters Ms. Patterson's position on pretext.  *See, e.g., Bechtel Const. Co. v. Secretary of Labor*, 50 F.3d 926, 935 (11th Cir. 1995) ("The pretextual nature of Bechtel's terminating Nichols is further demonstrated by Bechtel's shifting explanations for its actions.").

In sum, the court finds as to pretext that, "[t]he evidence presented by plaintiff[] is sufficient to allow a jury in the exercise of impartial judgment to conclude that [the Board's] proffered explanations are unworthy of belief." *MacPherson*, 922 F.2d at 776.   Alternatively, a reasonable jury could equally conclude that the Board's articulated reasons for hiring Ms. Horton over Ms. Patterson are legitimate and not a pretext for race discrimination.   Accordingly, because material factual disputes preclude the entry of summary judgment, the Board's Motion for Summary Judgment is **DENIED** as to count one of Ms. Patterson's complaint.

### B.   Retaliation

#### 1.   Ms. Patterson cannot establish a *prima facie* case of retaliation due to a lack of temporal proximity.

In *Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), the Supreme Court held regarding retaliation under Title VII:

> We conclude that the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace.  We also conclude that the provision covers those (and only those) employer actions that would have been materially adverse to a reasonable employee or job applicant.  <u>In the present context that means that the employer's actions must be harmful to the point that they could well dissuade a reasonable worker from making or supporting a charge of discrimination.</u>

*Id.*, 548 U.S. at 57 (emphasis added).  Prior case law in the Eleventh Circuit limited

13

the foundation of retaliation claims to treatment amounting to adverse employment actions. Accordingly, the *prima facie* elements for retaliation under Title VII pre-*Burlington Northern* were proof of: "(1) statutorily protected expression; (2) . . . an adverse employment action; and (3) . . . a causal connection between the two events." *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1155 (11th Cir. 2002).

The Eleventh Circuit has explained the impact of *Burlington Northern* on the second *prima facie* element to a Title VII retaliation claim as:

> [T]he Supreme Court has defined an adverse employment action in the context of a retaliation claim as an action by an employer that is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination.

*Wallace v. Georgia Dept. of Transp.*, 212 Fed. Appx. 799, 802 (11th Cir. 2006) (citation omitted). Accordingly as reformulated post-*Burlington Northern*, "'[t]o establish a claim of retaliation under Title VII or section 1981, a plaintiff must prove that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events.'" *Butler v. Alabama Dept. of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008) (citations omitted).

In this instance, Ms. Patterson bases her statutorily protected activity upon her 2003 EEOC proceeding. Her material adverse treatment includes not only the missed promotion in 2007, but also allowing "children who were zoned for Houston

Elementary to move to other schools, which would bring Dr. Patterson's numbers down" and requiring Ms. Patterson to use her personal leave "to attend professional development" when other administrators were not required to do so. (Doc. 43 at 26). Unlike the promotion, the record does not reflect any time period for these other alleged retaliatory incidents. (*Id.*; *see also* Doc. 44-5 ¶¶ 17-18).

The Board maintains that no matter what retaliatory action she complains about, Ms. Patterson cannot satisfy the causal connection element as a matter of law because too much time has elapsed between her protected conduct and any allegedly adverse measure taken against her by the Board. The court agrees that even if Ms. Patterson has satisfied *Burlington Northern*'s material adversity standard, her retaliation claims still fail because she is unable to establish a causal connection due to a lack of temporal proximity.

As the Eleventh Circuit has explained the causal connection element:

> In order to prevail on a retaliation claim, a plaintiff must establish the requisite causal connection between her statutorily protected conduct and the adverse employment action. *See Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993). To establish that causal connection, a plaintiff need only show "that the protected activity and the adverse action were not wholly unrelated." *Simmons v. Camden County Bd. of Educ.*, 757 F.2d 1187, 1189 (11th Cir. 1985). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action. The defendant's awareness of the protected statement, however, may be established by circumstantial evidence."

*Goldsmith*, 996 F.2d at 1163 (internal citations omitted).

*Clover v. Total System Services, Inc.*, 176 F.3d 1346, 1354 (11th Cir. 1999).

Here, the primary adverse employment action about which Ms. Patterson complains is the Board's decision to exclude her as a candidate for the superintendent vacancy which occurred by formal vote on May 14, 2007, which is nearly 4 years (or 47 months) after Ms. Patterson's filing her first EEOC charge against the Board on June 27, 2003. (Doc. 42-13 at 73, 75; *id.* at Ex. 1). "[I]n the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citations omitted).

As the Eleventh Circuit has explained the causal connection *prima facie* element:

> We have noted that the Supreme Court in a Title VII retaliation case has stated that in order to show a causal connection "mere temporal proximity between knowledge of protected activity and an adverse action must be 'very close.'" *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (involving alleged retaliation under the ADA) (citing *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511, 149 L. Ed. 2d 509 (2001) (alterations omitted)). Moreover, we have observed that the Supreme Court has cited with approval decisions in which a three to four month disparity was found to be insufficient to show causal connection. *Id.* We concluded that "[i]f there is a substantial delay between the protected expression and the adverse

16

action in the absence of other evidence tending to show causation, the complaint of retaliation fails as a matter of law." *Id.*

*Wallace*, 212 Fed. Appx. at 802. A time elapse of 47 months is not only not "very close," but also is substantially far from "very close." *See Thomas*, 506 F.3d at 1364 ("That three (3) month period, without more, does not rise to the level of 'very close.'") (citing *Clark*, 532 U.S. at 273).

Moreover, this time period is far in excess of other examples in which the Eleventh Circuit has determined that a causal connection, in the absence of any other supporting evidence, did not exist as a matter of law. *See, e.g.*, *Watkins v. Huntsville, Ala.*, 176 Fed. Appx. 955, 956-57 (11th Cir. 2006) (affirming summary judgment on plaintiff's retaliation claim because eight (8) month lapse between filing of EEOC charge and her termination does not support causal link and plaintiff could not show nexus otherwise); *Hammons v. George C. Wallace State Comm. Coll.*, 174 Fed. Appx. 459, 464 (11th Cir. 2006) (affirming summary judgment on plaintiff's retaliation claim because letter of grievance written to chancellor five (5) months before termination is not sufficient temporal proximity to establish causal element of *prima facie* case); *Wascura v. City of S. Miami*, 257 F.3d 1238, 1245 (11th Cir. 2001) (three and one-half (3 1/2) month temporal proximity, without more, is insufficient to create jury issue); *Sierminski v. Transouth Fin. Corp.*, 216 F.3d 945, 951 (11th Cir.

17

2000) (holding that seven (7) month time period between protected activity and adverse employment action is too indirect to satisfy causal connection requirement); *Sullivan v. Nat'l R.R. Passenger Corp.*, 170 F.3d 1056, 1160-61 (11th Cir. 1999) (finding no causal link between protected activity in February 1994 and adverse employment actions in late 1994 and early 1995).

Further, Ms. Patterson has not adduced sufficient "other evidence tending to show causation." To the extent that Ms. Patterson relies upon the Board's undisputed awareness of her prior EEOC charge, proof of an employer's knowledge of a charge does not cure the time gap deficiency between the protected activity and alleged retaliatory action. *See Farley v. Nationwide Mut. Ins. Co.*, 197 F.3d 1322, 1337 (11th Cir. 1999) ("We have plainly held that a plaintiff satisfies this element if he provides sufficient evidence that the decision-maker became aware of the protected conduct, <u>and</u> that there was close temporal proximity between this awareness and the adverse employment action.") (emphasis added) (citations omitted).

Alternatively, in opposing the Board's Motion for Summary Judgment, while Ms. Patterson choppily points to pieces of her retaliation theory, she makes no effort to directly respond to the Board's temporal argument. (*See* Doc. 43 at 25-27). Therefore, Ms. Patterson has abandoned this *prima facie* issue and, as a result, it is appropriate for this court to dismiss her retaliatory failure to promote claim on

summary judgment.  *See, e.g.*, *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1322 (11th Cir. 2001) (finding claim abandoned when argument not presented in initial response to motion for summary judgment); *McMaster v. United States*, 177 F.3d 936, 940-41 (11th Cir. 1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.*, 10 F.3d 1563, 1568 (11th Cir. 1994) (concluding that a district court "could properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment"); *Bute v. Schuller International, Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998) (finding unaddressed claim abandoned); *see also* n.4, *supra*.

### 2.   Ms. Patterson's other claimed incidents of retaliation also failed.

With respect to Ms. Patterson's other claimed incidents of retaliation (*i.e.*, allowing children to move away from Houston Elementary and requiring Ms. Patterson to use personal leave for professional development), these also fail for lack of a temporal connection.  More specifically, because Ms. Patterson has not placed these retaliatory acts into any temporal context, she has simultaneously not shown "that there was close temporal proximity" between her protected EEOC charge-filing

conduct in 2003 and any subsequent actions taken against her.  Alternatively, and comparable to her retaliatory failure to promote claim, her lack of any appreciable response means that she has abandoned the causation issue.

Alternatively, even assuming that the temporal component is prima facially satisfied, Ms. Patterson still has not shown how she meets *Burlington Northern*'s material adversity standard.  More specifically, the court does not envision how allowing students to move to other schools and requiring use of personal leave for professional development is harmful to the point that it could well dissuade a reasonable worker from making or supporting a charge of discrimination.  In fact, neither one of these other allegedly materially adverse actions is even mentioned in Ms. Patterson's 2007 EEOC charge.  (Doc. 1 at Ex. A).

Also, *Burlington Northern* reaffirms the more general principle that, for an action to be retaliatory, it must be taken or decided by an employer.  *Id.*, 548 U.S. at 63-64.  As the Supreme Court explained:

> An employer can effectively retaliate against an employee by taking actions not directly related to his employment or by causing him harm outside the workplace. *See, e.g., Rochon v. Gonzales*, 438 F.3d, at 1213 (FBI retaliation against employee "took the form of the FBI's refusal, contrary to policy, to investigate death threats a federal prisoner made against [the agent] and his wife"); *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984, 986 (C.A. 10 1996) (finding actionable retaliation where employer filed false criminal charges against former employee who complained about discrimination). A provision limited to

> employment-related actions would not deter the many forms that effective retaliation can take. Hence, such a limited construction would fail to fully achieve the anti-retaliation provision's "primary purpose," namely, "[m]aintaining unfettered access to statutory remedial mechanisms." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 346, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997).

*Burlington Northern*, 548 U.S. at 63-64 (emphasis added). The examples cited above involve an employer's clear decision-making authority; conversely, not all negative actions that a plaintiff endures, such as by a co-employee, a non-supervisory employee, a former employee, or even a supervisor, are appropriately attributable to an employer as retaliatory conduct just because they occurred. Here, because Ms. Patterson does not link her other examples of retaliatory treatment to her employer, the Board, they do not survive summary judgment for this additional reason. Accordingly, the Board's Motion for Summary Judgment is **GRANTED** as to count two of Ms. Patterson's complaint.

### C.    Motion to Strike

Because the court's decision on summary judgment does not turn upon any of the evidence objected to in the Board's Motion to Strike, that Motion is **TERMED** as **MOOT**.

## V.    CONCLUSION

Therefore, for all the reasons explained above, the Board's Motion for

Summary Judgment is **GRANTED** as to count two and otherwise **DENIED**.  Further, the Board's Motion to Strike is **TERMED** as **MOOT**.  An order setting this case for a final pretrial conference will follow.

       **DONE** and **ORDERED** this the 15th day of July, 2010.

**VIRGINIA EMERSON HOPKINS**
United States District Judge